This is case number 4-14-0814, People in the State of Illinois v. Trey McSpadden. For the appellant, we have attorney Pisetsky. Good morning. And for the court. Your Honor, at first I want to address the state. They have a motion to strike our brief and dismiss the appeal. I don't think that that should be granted, Your Honor. I think that under Rule 341, we have laid out the facts as they are. I agree that there may be a few hypotheticals, but the crux of this case is an ineffective assistance of counsel case, and I think that's what we need to do. And the lack of evidence or the lack of counsel's questioning of witnesses, I think, is as important as the actual facts. In very rare occasions, the court has struck a brief, especially when the facts are laid out with proper citations. In all the cases that the state has cited, the court did not strike the briefs and, in fact, went on and ruled on the merits of the case. And therefore, Your Honor, I don't believe that in this specific case the brief should be stricken or the facts. Moving to the ineffective assistance of counsel, under Strickland and Chandler, I believe that counsel's performance here at trial fell far below the objective standard of reasonableness. But for that performance, there is a reasonable probability that the result would have been different. Because my client, Tramex Fadden, was extremely prejudiced by this performance. I believe, if I read the state's argument properly, I think they even conceded that trial counsel's arguments were disjointed, resulting in what could appear as misstatements. It is clear, that's what the state has stated in their brief, that he could have been more articulate. And it's not that he could have been more articulate, Your Honor. I believe that counsel operated under the mistake of the law, baseless misunderstanding of the law. It was such a misunderstanding that even in his opening statement, the counsel did not develop a theory that Mr. McFadden could have ever won this case. It was on page 165 of the record, Your Honors. Counsel starts in his opening statement by saying, and the conclusion being, I don't believe the evidence will show that it was my client that killed him, that murdered him. I believe the evidence will show they don't know what bullet, whoever fired it, was the cause of death. He admits, and he goes on to admit, that there were two shooters. He admits and never challenges the fact that his client at the time, my client now, Mr. McFadden, has shot a gun. He proclaims to the jury in his opening statement on page 171 of the record, as far as the bullet, the wound, that is problematic. He tells the jury that that is problematic because it's a medium-sized bullet recovered from Mr. Kirk, knowing that the state is arguing that the bullet that struck Mr. Kirk came from a .357 and it was a .35 caliber or .38 caliber. Whereas Mr. Cunningham, according to the state, would use a .25 caliber. So from the beginning, from the moment he opened his mouth, Your Honors, Mr. McFadden did not have an opportunity to challenge the evidence. In his closing argument, not only he repeatedly stated that the state vouches for the witnesses' credibility, he himself vouches for the credibility of the witnesses that the state presented. He said, you are going to believe no matter what I say. Later on in the day, he's going to have a weapon, meaning Mr. McFadden is going to have a weapon. What was his strategy? I don't know, Judge. His strategy, in my opinion, was to try to convince the jury that his client, Mr. McFadden, was not the first shooter. It was not him that struck Mr. Kirk, possibly, but as the state pointed out in their brief and in their closing argument, in their rebuttal argument, that is not a defense. Counsel, I'm sure you are familiar with case law from this court where we have a question of strategy and tactics that we often think it's better to develop a record at the trial court level than have the ineffective assistance of counsel raised collaterally. Don't you think that would be prudent in this particular matter? I think this case is so outside the normal cases that we see where, as in Chandler, counsel did not develop any cross-examination, no meaningful cross-examination. His cross-examination was cursory at best. He repeated direct examination questions in a leading manner. That is not cross-examination. His theory of the case, as Your Honor asked me, was to possibly, maybe, try to convince the jury that Mr. McFadden was not the first shooter, but I asked, so what? I don't know what his strategy was. I can't tell. But there were several eyewitnesses that incriminated your client, so perhaps there was some type of tactic or strategy counsel was developing that simply is impossible for me, at least, to see at this point without developing a further record. And that is the reason why I actually started in the opening statement of counsel. And in the opening statement, if you go and read the opening statement, he admits in the opening statement in the record, page 166, he's admitting that Mr. Cunningham had a small caliber weapon, knowing that the bullet that struck Mr. Kirk was a .38. On page 167, he's telling the jury that Mr. Cunningham was the first shooter, but also admits that Cunningham had heard additional shots. And that is in the opening statement. He tries to tell the jury that the theory of the state is, A, that Mr. McFadden was responsible for the death of Kevin Kirk, or Devin Kirk, or he is accountable for the action of Mr. Cunningham, who could have caused the death of Mr. Kirk. However, he only argues that Mr. Cunningham was the first shooter. He never questions that at all during his cross-examination. There is testimony for Mr. Cunningham. Supposedly there was some kind of phone conversation where Mr. McFadden called Mr. Cunningham to come over because of some sort of fight. He never raises that, because that is the crux of the accountability, the agreement. He goes in his closing argument and explains to the jury that Devin Kirk, Mr. Jelks, had an agreement to go and fight. And he talks about this agreement and the plan. And he explains to the jury very well what their plan was, which you think would be an understanding of the accountability law. But then in the same breath, he says that just because Mr. Cunningham shot first, my client is not guilty. I know that generally it's an issue that is raised collaterally. I know that it is an issue that is not normally argued before, Your Honors. But I think that this case falls squarely within the cases that the lawyer's performance fell so far below what a lawyer should do at trial, where he comes out with an opening statement and admits his client's guilt. And then the state agrees with him in their closing argument and telling the jury on their rebuttal argument. That's how they started it. They started it, even if you take counsel's argument, then you must convict. And as the court in Chandler said, trial strategy by the attorney for the defendant is the basis for counsel's deficiencies in this case. The only way Mr. McSpadden could have been found not guilty was if the jury ignored the jury instructions. He had no chance from the moment his attorney opened his mouth, Your Honors. Thank you. Thank you, counsel. Ms. Johnson. Good morning. May it please the court. I would like to just briefly address a couple of the other issues that the defendant raised in his brief. I will not address at length the reasonable doubt argument. I know this court detests when people recite at length what's in the brief, and I did set out at length the facts on the reasonable doubt. And I certainly believe that it was more than sufficient for the jury to find, as they did, that the defendant was guilty of murder and personally discharging a weapon. I do, though, want to briefly mention that in his brief, he argues that the state did not prove sufficiently that there was evidence to allow the 20-year add-on to be put onto the conviction based on the discharge of a firearm. As I noted in my brief, the defendant both forfeited this argument, and he also somewhat invited the error by acknowledging during the trial. And it was an acknowledgment of his dislike of that legislation, but at the same time as I read it, it was an acknowledgment that it applied nonetheless, regardless of his distaste for it. So I don't believe that this is proper now to try and argue a different point than was acknowledged and conceded at trial. And then before I address the ineffectiveness, I do want to address the arguments that he didn't receive a fair trial. Again, in my brief, I recognized that the defendant had said he did forfeit this argument before the trial court. And I accepted that forfeiture, and I addressed it accordingly. But I found it interesting that in reply, he came back and said that the state is wrong that Mr. McSpadden forfeited the argument. Regardless of his up or down, the record establishes he did forfeit the argument. And the law establishes that he must either overcome the forfeiture with plain air or by showing extraordinary circumstances under Sprinkle. Part of the problem with defendant's argument is that the issues of reprimanding the counsel in front of the jury are facts that were never alleged or included in the statement of facts, which was one of the things I pointed out and which was briefly addressed today. At no point in time are any of the facts surrounding these reprimands included in the statement of facts today. And that is a violation of Supreme Court Rule 341. And beyond that, again, there is forfeiture. But I will address briefly those merits. In reprimanding the trial counsel, he identified two occasions. And the first one had to do with Officer Klein's testimony. During cross-examination of Officer Klein, the defense counsel went to great lengths to focus on what Officer Klein did not do when he was at that site. He did not include the name or the sex of the person that was found next to the body of the victim, Kirk. He did not interview that witness. He did not detain that witness. And he did not determine if that witness had any involvement beyond merely being a witness. Were they involved in the crime? And the clear inference from all of that is that Officer Klein had somehow failed his duties that night when he was sent to that crime scene. On redirect, the state asked Officer Klein two questions. The first one was, were numerous officers sent to this crime scene to investigate? And Officer Klein said, yes. And the second question is, was it Officer Klein's job to document and to interview witnesses? And Officer Klein said, no. He had not been sent there to interview witnesses. He had been sent there to try and talk to the victim, to try and see if the victim would be able to identify the person who shot him. With those two questions asked, and the state indicating no additional questions, the state indicated that they were done, defense trial counsel, without permission from the court, jumped up and said, just a couple, indicating a desire to recross. The trial court did say, don't ask questions on recross unless you are granted permission. And then they did deny a late request for permission to recross. Now, defendant says that the trial court delivered this reprimand in a demeaning way. But we can't tell that from the transcript. We have words on the paper. We don't have tone. So that's speculation at this point. But defendant has failed to establish how this comment was a material factor in the jury's decision to convict the defendant. And therefore, he has not established plain error. He also alleges that there was error with the reprimand of his attorney during the state's witness testimony. And as the record establishes, and again, I addressed in my brief, there was a prior occasion where defense counsel had been conversing with defendant. And it had been disruptive and difficult. And the trial court had called the defense counsel on it. And so here they were again. And after being given this initial warning, he was disrupting again. And so he stopped it. And yes, the warning was stern. But it was also far from being erroneous. It was proper. It was given in light of a repeated occurrence of this trial counsel being disruptive to the courtroom. But again, no evidence that that in any way was a material factor in making the jury find that the defendant was guilty. Now I will address the ineffectiveness. He argues ineffectiveness under two issues. One being the accountability and one being a failure to more thoroughly cross-examine witnesses. And I believe that the record completely rebuts the argument that he didn't cross-examine witnesses in a meaningful way. If you look at killings, the accusation is that he didn't cross-examine thoroughly enough on his memory and on his alcohol use. But the record shows he got killings to admit the alcohol use, to elicit that he was in fact a drunk. When the officers came back to interview him on the first night. He got him to admit that he consumed a bit of everything. Beer, alcohol, wine. And he also got an admission from killings that every single morning he drinks a pint of wild rose wine, as he had that morning as well before witnessing the murder. While trial counsel may have wanted additional questions and may personally have handled it in a different manner, this certainly doesn't fall under the categories of cases where the court has found no meaningful cross-examination happened. Same thing with Johnson. Johnson admitted her location. She was 100 to 500 yards away. So there was testimony as to the distance and how that could impair her seeing the weapon. She candidly admitted, I did not see the weapon fired. I saw this man put the weapon in his waistband, but I did not see him fire it. Counsel also questioned Johnson about the absence of a statement to the officer who interviewed her after the murder, about that gun being seen in the waistband. The trial counsel questioned Johnson about losing sight of the defendant when he crossed into the vacant lot, and she drove off and then saw him later as she was driving again. And he asked Johnson about her identification of the defendant from the photo lineup that was provided, because although she did identify a defendant in that photo lineup, she also made the comment that the complexion of the person in the photo was a darker tone than the man she saw with the gun. So again, counsel may have handled it differently, but it doesn't mean there was a lack of meaningful cross-examination. In regards to the accountability, I did state in my brief, and I stand by it, it was inarticulate, and there does seem to be a legitimate argument that he misunderstood accountability. But even if you find that, the defendant has to overcome the prejudice. He has to show that this case would have had, that the jury's decision was undermined, or that there would have been a different conclusion. How about his argument that the only way the defendant could have been acquitted is if the jury ignored the jury instructions? Is there any merit to that? Honestly, I'm not sure if there's any merit to that. And I come from the position that when you have a client, there are times, and courts have recognized there are times, there is no good defense. The defendant isn't giving you a good defense, isn't giving you witnesses, and isn't giving you anything else. And so the counsel for that defendant does what they can with what they have. Which is why in a post-conviction petition, when this can have a record made for it, maybe that will come to light. As I said, I acknowledge that his statement about the accountability seems to be a misunderstanding of the way this defendant could have been convicted. I acknowledge that. But again, he still has to overcome this prejudice. And even if the evidence was circumstantial, there was also a lot of direct evidence, and it was overwhelming evidence. And yes, defense counsel acknowledged some of this damning evidence against his client. Making the comments about, let's not pick on Mr. Killings, he's had a stroke, etc. The things that were laid out. But he also urged the jury to look at those arguments under a critical eye. Pointing out that, yes, Mr. Killings did this, but his severe intoxication leads us to believe, did he really see anything at all? And in Johnson, again, he brought out to the jury that, yes, she said this, but she also didn't report seeing the waistband. And so it appears to me, given what he had in terms of presenting a defense, he did the best with what he could. And sometimes it doesn't make sense as a strategy to ignore the obvious. To call Killings and to call Johnson and just completely throw their testimony out. He was acknowledging that the jury was likely going to find their testimony credible, but he was still asking them to look at it with their own independent critical eye. Also, we have to keep in mind that the jury here returned a general verdict of guilty. And in those situations, the defendant is considered guilty of all the charges. And the presumption is that the jury found the defendant guilty of the most serious charge. Here, the presumption would be that the defendant found the defendant guilty of direct, intentional murder. And an argument that he was found guilty under an accountability theory has been rejected by the Supreme Court under similar circumstances in Garcia. So I would say that regardless of what you find on his accountability, the defendant still failed to establish a prejudice. And I would ask this Court to affirm. Thank you, Counsel. Mr. Posetsky, any rebuttal? I think that the question Your Honor asked and my argument of having merit, that the only way Mr. McFadden could have won the case at all would have been if the jury ignored the jury instructions. And I don't believe, with all due respect to Counsel, I don't believe that her answer really answered your question, and I don't think that it was, she said, not sure if it has any merit. In Chandler, where the Court quotes Hattery, they said, the Court held that once the decision to stand trial has been made, Counsel must put the prosecution to its burden of proving the defendant guilty beyond a reasonable doubt unless the record adequately shows the defendant knowingly, intelligently consented to Counsel's strategy. There is no consent for the argument that Mr. McFadden was guilty. Counsel, and again, Counsel for the State admits, Mr. McFadden, trial Counsel, did not understand the law. Mr. McFadden, as it's said again in Chandler, Counsel, defective performance clearly prejudiced the defendant as the jury was forced to convince the defendant of the offense charge. As it is here, we also find there is a reasonable probability that but for Counsel's deficient performance, the result of the trial could have been different. The burden is not for us to show your honors that the result must have been different or would have been different. It could have been different here. Absolutely could have been different. Mr. McFadden, Mr. Cunningham was never challenged on the fact that he actually fired a different gun. Mr. McFadden, the attorney for Mr. McFadden took it as granted that Mr. Cunningham fired a .25 caliber gun. Never challenging him once on that issue. What difference would that make? Because if Mr. McFadden, for example, that's one example your honor, and the difference is that the bullet in Mr. Kirk was fired from a larger bullet. And if Mr. McFadden, if Mr. Cunningham. The personal discharge of the firearm would be the difference for the 20 year. Correct, for the 20 year. The Counsel acknowledged, as the state said, the Counsel acknowledged at trial that the 20 year add-on is appropriate. That's another example of ineffectiveness. I see my time is almost up, your honors. Unless you have other questions, I think that this case falls in the realm of cases that must be decided on direct appeal. And not to be waiting for a collateral challenge years down the road. Because he is serving a long sentence. He does deserve, this is a murder trial. It's a young gentleman. He does deserve, at least under the Sixth Amendment, an opportunity for a fair trial. Thank you Counsel. We'll take this matter under advisement.